IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CEMENT MASONS' UNION LOCAL NO. 592 PENSION FUND, et al.

        Plaintiffs,

    v.

ALMAND BROTHERS CONCRETE, INC.

        Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-cv-5413 (JBS/AMD)

**MEMORANDUM OPINION**

**SIMANDLE, Chief Judge:**

This case arises from Defendant's alleged failure to make contributions to the Plaintiffs' funds under the terms of a collective bargaining agreement, and specifically concerns the failure of the Defendant to make payments to employee benefit plans that fall within the ambit of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs are the Cement Masons' Union Local No. 592 of Philadelphia ("Union"), Cement Masons' Union Local 592 Pension Fund ("Pension Fund"), Cement Masons' Union Local 592 Welfare Fund ("Welfare Fund"), Cement Masons' Union Local 592 Joint Apprenticeship Training Fund ("Training Fund"), and Cement Masons' Union Local 592 Political Action Committee ("PAC"). Defendant is Almand Brothers Concrete, Inc., a concrete installation contractor based in Audubon, New Jersey. Plaintiffs assert ERISA (Count One) and breach of

contract (Count Two) claims in their Amended Complaint. [Docket Item 4.] Presently before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint because Plaintiff's claims are barred by the statute of limitations. [Docket Item 9]

Because the Court finds that Plaintiffs' Complaint was filed within the six year limitations period, the Court will deny Defendant's motion to dismiss. The Court finds as follows:

1.   Plaintiffs filed their Complaint on August 28, 2014 [Docket Item 1], and the Amended Complaint on October 21, 2014 [Docket Item 4]. They allege that between January 2005 and December 2007, Defendant failed to make certain payments to Plaintiffs' ERISA Funds, as required under Defendant's collective bargaining agreement with the Union and the Funds' trust agreements, in a sum totaling at least $2,738,574.86. (Am. Compl. ¶¶ 18-10, 21-22.) Plaintiffs further allege that Defendant "concealed the underpayments at issue in this Complaint and resisted and delayed an audit. As a result, the underpayments were only discovered through due diligence and an audit in September 2008, whose results were transmitted to Company on September 17, 2008." (Am. Compl. ¶ 15.)

2.   Plaintiffs assert an ERISA violation under 29 U.S.C. § 1145[1] in Count One for failure to make contractually-required

---

[1] 29 U.S.C. § 1145 provides:

contributions, and a breach of contract claim in Count Two. (Am. Compl. ¶¶ 19, 23.) This Court exercises jurisdiction over Plaintiffs' ERISA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 1132[2] and exercises supplemental jurisdiction over Plaintiff's breach of contract claim pursuant to 28 U.S.C. § 1367.

3.   A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff failed to set forth sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To determine if a complaint meets the pleading standard,

---

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
29 U.S.C. § 1145.
[2] 29 U.S.C. § 1132(a) provides district courts with exclusive jurisdiction over civil actions brought by a fiduciary to enforce certain provisions of ERISA statutes, including 29 U.S.C. § 1145, which is at issue here. (Compl. ¶ 19.)

the Court must strip away conclusory statements and "look for
well-pled factual allegations, assume their veracity, and then
determine whether they plausibly give rise to an entitlement of
relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012)
(internal quotation marks omitted).

4.   Defendant seeks to dismiss both claims as time-barred.
Ordinarily, statutes of limitations arguments are raised as
affirmative defenses in the answer to a complaint. See Fed. R.
Civ. P. 8(c).  However, if "the time alleged in the statement of
a claim shows that the cause of action has not been brought
within the statute of limitations," a statute of limitations
defense may be made in the context of a Rule 12(b)(6) motion.
Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting
Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002)); see also
Garcia v. Tenafly Gourmet Farms, Inc., No. 11-6828, 2012 WL
715316, at *3 (D.N.J. Mar. 5, 2012) (stating same). A motion to
dismiss under Rule 12(b)(6) on statute of limitations grounds
should be granted "where the complaint facially shows
noncompliance with the limitations period and the affirmative
defense clearly appears on the face of the complaint." Oshiver
v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d
Cir. 1994). If the bar is not apparent on the face of the
complaint, then it may not afford the basis for dismissal.
Schmidt, 770 F.3d at 249.

4

5.   Here, neither party disputes that New Jersey law supplies the statute of limitations for the breach of contract claim and the ERISA claim, see Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 625 (3d Cir. 1984), and that both claims are subject to a six year statute of limitations period. (Def. Mot. to Dismiss [Docket Item 9-2] at 3; Pl. Opp'n [Docket Item 12] at 4-5.) In New Jersey, breach of contract claims are subject to a six year statute of limitations. N.J. Stat. Ann. § 2A:14-1 ("Every action at law . . . for recovery upon a contractual claim or liability, express or implied . . . shall be commenced within 6 years next after the cause of such action shall have accrued."). The ERISA statute does not specify a limitations period for claims for recovery of delinquent funds, and courts in this state have held that such claims are governed by the state's six-year limitations period for contract actions.[3] See Kapp v. Trucking Empls. of North Jersey Welfare Fund, Inc. – Pension Fund, 426 Fed. App'x 126, 129 (3d Cir. 2011) (applying New Jersey's six year limitations period governing contract

---

[3] ERISA provides a statute of limitations for claims alleging a breach of fiduciary duty. See 29 U.S.C. § 1113 (specifying six year statute of limitations for breach of fiduciary duty claims). However, ERISA does not contain a statute of limitations for non-fiduciary claims, such as the one present in this case. Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005). Federal courts therefore apply the statute of limitations from "the forum state claim most analogous to the ERISA claim at hand" when analyzing the timeliness of non-fiduciary claims. Romero, 404 F.3d at 220.

actions to ERISA claim for recovery of benefits); Stier v.
Satnick Dev. Corp., 974 F. Supp. 436, 439 (D.N.J. 1997) ("New
Jersey's six-year statute of limitations applicable to contract
actions applies also to claims under ERISA to recover delinquent
pension contributions."); Starr v. JCI Data Processing, Inc.,
767 F. Supp. 633, 638 (D.N.J. 1991) (holding that New Jersey's
six year statute of limitations applies to plaintiff's breach of
contract and ERISA claims, including claim to recover benefits);
Hotel Emp. and Rest. Emp. Int'l Union Welfare Fund v. Pub of
N.J., 744 F. Supp. 91, 95 (D.N.J. 1990) (action under ERISA for
delinquent pension fund contributions is subject to the six year
statute of limitations period governing contract actions rather
than shorter period for wage disputes). The Court therefore
agrees with the parties that both of Plaintiffs' claims are
subject to a six year statute of limitations.

        6.    The central disputed issue in this motion to dismiss
is when Plaintiffs' claim accrued. Plaintiffs allege that
Defendant failed to contribute to benefit funds from 2005 to
2007, but that the discovery rule tolled the running of the
statute of limitations until September 2008, when Plaintiffs
discovered the underpayments after a delayed audit. (Pl. Opp'n
at 5-6.) Thus, under the six-year statute of limitations period,
Plaintiffs' claims did not expire until September 2014, and the
August 2014 Complaint was therefore timely. (Id.) Defendant

                                    6

argues that Plaintiffs "had the ability to conduct an audit, which would have revealed Almand Brothers's alleged underpayment, at any time," and Plaintiffs should reasonably have been aware of the underpayments before September of 2008. (Def. Reply [Docket Item 13] at 2.) They argue, in other words, that even if the limitations period was tolled under the discovery rule, it should have started running again before September 2008, and Plaintiffs' claims asserted in their August 28, 2014 Complaint, were therefore time-barred.

7.    As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues. The discovery rule, however, functions to delay the beginning of the statutory limitations period from the date when the alleged injury occurred to the date when a plaintiff discovered or should have reasonably discovered that he has been injured. See Oshiver, 38 F.3d at 1386 (explaining that "the 'polestar' of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff." (citing Bohus v. Beloff, 950 F. 2d 919, 925 (3d Cir. 1991))). In other words, under the discovery rule, a cause of action does not accrue so long as the plaintiff is "reasonably unaware either that he [] has been injured, or that the injury is due to the fault or neglect of an identifiable individual or

entity". <u>Mancuso v. Neckles</u>, 747 A.2d 255, 256 (N.J. 2000); <u>see also</u> <u>Vispisiano v. Ashland Chemical Co.</u>, 527 A.2d 66, 71-72 (N.J. 1987). When, however, a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights until the normal period of limitations has expired, "the pertinent considerations of individual justice as well as the broader considerations of repose" will coincide to bar his action. <u>Farrell v. Votator Div. of Chemetron Corp.</u>, 299 A.2d 394, 396 (N.J. 1973).

8.  The Court finds application of the discovery rule to be appropriate in this case. Plaintiffs specifically alleged in their Complaint that the irregularities in fund payments were concealed by Defendants and that the irregularities were only discovered "through due diligence and an audit in September 2008." (Compl. ¶ 15.) Taking these factual allegations and all reasonable inferences that can be drawn therefrom as true, as the Court must, <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997), it is plausible that Plaintiffs could not reasonably have discovered the underpayments until the audit was conducted.

9.  Defendant points out that it was required to submit monthly remittance reports with the Funds and argues that "if Plaintiffs had reviewed the monthly remittance reports," they would have discovered the delinquent contributions before

September 2008. (Def. Mot. to Dismiss at 4.) At the motion to dismiss stage, the Court must accept all factual allegations as true and "construe the complaint in the light most favorable to the plaintiff." Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011). Here, nothing in the Complaint gives rise to an inference that the irregularities were discoverable through a review of the monthly remittance reports, and that Plaintiffs chose to ignore those reports. In fact, Plaintiffs specifically pleaded that Defendant "concealed the underpayments at issue" from Plaintiffs, which suggests that the underpayments were not readily apparent to Plaintiffs without an audit.[4] (Compl. ¶ 15.) See Robbins v. Iowa Rd. Builders Co., 828 F.2d 1348, 1354 (8th Cir. 1987) (noting that "[g]iven the self-reporting system of employer contributions to the funds, the trustees may not discover a particular employer owes delinquent contributions unless and until they conduct an audit." (citing Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559 (1985))); Hotel Emp. and Rest. Emp. Int'l Union Welfare Fund v. Pub of N.J., 744 F. Supp. 91, 94 (D.N.J. 1990) (stating same).

---

[4] Plaintiffs also state in their Opposition brief that the delinquent payments "were not apparent until the audit was performed." (See Pl. Opp'n at 6.)

10.   The Third Circuit's decision in Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274 (3d Cir. 1991), is instructive. In that case, the plaintiffs alleged that the defendant employer was delinquent in making benefit fund contributions and were not alerted to irregularities in fund contributions until they subjected the employer to an audit. 949 F.2d at 1278. The defendant argued that the plaintiffs' claims were barred by the statute of limitations, and the discovery rule did not apply because "the plaintiffs possessed the right to audit records, [and] they possessed the ability to detect the irregularities alleged in this case long before the statute of limitations expired." 949 F.2d at 1282. The Third Circuit disagreed, holding that the plaintiffs' failure to audit did not demonstrate a lack of reasonable diligence because there was no indication that the defendant's monthly accounting reports to the union were inaccurate. Id. at 1283.

11.   Similarly, in Stier v. Satnick Dev. Corp., 974 F. Supp. 436 (D.N.J. 1997), the plaintiffs filed an action under ERISA to recover delinquent pension contributions from their employer, and the defendant argued that a portion of the plaintiffs' claims for recovery was barred by the six year statute of limitations because the delinquent contributions occurred more than six years before the plaintiffs filed the action. Id. at 440. However, because the plaintiffs alleged that

the defendant had refused to produce its records for an audit
and had misrepresented to the plaintiffs that its monthly
contributions complied with the CBA, the district court held
that the statute of limitations was tolled. Id. ("By certifying
that its monthly contributions complied with the CBA, Satnick
affirmatively concealed its noncompliance with the CBA. There
appears to be no basis on which the plaintiffs could have
discovered the misstatements from the face of the reports.")
Taking Plaintiffs' allegation that the defendants "concealed the
underpayments at issue" as true, it is plausible that the
monthly remittance reports gave no indication of any
irregularities in the benefits funds.

12.  Plaintiffs have also plausibly pleaded that the audit
could not have occurred any earlier. The audit occurred less
than a year after the underpayments allegedly ended in December
2007, which does not suggest undue delay. Moreover, similar to
Stier, Plaintiffs alleged that Defendant "resisted and delayed
an audit." (Compl. ¶ 15.) Finally, there was nothing suspicious
about Defendants' monthly reports that would have alerted
Plaintiffs to the need to perform an audit any earlier. Thus, an
inference may be drawn that Plaintiffs could not reasonably have
discovered the irregularities until the audit was performed in
September 2008. Plaintiffs' failure to conduct an audit before
that time does not demonstrate a lack of reasonable diligence.

Viewing Plaintiffs' allegations in such light, the Court does not find that Plaintiffs were dilatory in investigating Defendant's alleged failure to contribute to the Funds.

13. Defendant argues that <u>Sheet Metal Workers</u> and <u>Stier</u> are not relevant here because "those cases involved explicit allegations that the defendants certified that their contribution records were accurate and complete and that the plaintiffs relied on those certifications." (Def. Reply at 3.) The Court is not persuaded by Defendant's argument. Plaintiffs need only allege enough facts to give rise to a plausible inference that they exercised due diligence, and the Court finds that Plaintiffs have done so here by stating that Defendants concealed the underpayments and delayed an audit until September 2008. Other courts have found similar allegations sufficient to toll the running of the statute of limitations. <u>See</u>, <u>e.g.</u>, <u>In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.</u>, No. 00-7804, 2004 WL 487222, at *5 (S.D.N.Y. Mar. 12, 2004) (allowing a fraudulent concealment claim to proceed which, inter alia, was based upon the allegation that "Plaintiffs and the members of the class had no knowledge of the said antitrust violations, or of any facts which might have led to the discovery thereof, until November, 1998 . . . Plaintiffs and the members of the class could not have discovered the violations at an earlier date by the exercise of due diligence because of the self-

12

concealing nature of the conspiracy and because the defendants

employ secrecy and other practices and techniques to avoid

detection . . . ."); In re Rubber Chems. Antitrust Litig., 504

F.Supp.2d 777, 788 (N.D. Cal. 2007) ("Plaintiffs' allegation

that they could not have discovered the alleged conspiracy 'at

an earlier date by the exercise of reasonable due diligence

because of the deceptive practices and techniques of secrecy

employed by the Defendants and their Co-Conspirators' to conceal

the conspiracy . . . is a sufficient allegation of due diligence

[as linked with the alleged non-discovery of the conspiracy

until October 2002]."). [5]

---

[5] Defendant additionally argues that Plaintiffs are not entitled
to invoke the fraudulent concealment doctrine. Similar to the
discovery rule, the fraudulent concealment doctrine tolls the
running of the statute of limitations "until the plaintiff
discovers the cause of action or discovers facts that reasonably
put him on notice of it." Plain v. Flicker, 645 F. Supp. 898,
902 (D.N.J. 1986). Defendant argues that the fraudulent
concealment doctrine has not been satisfied because that
doctrine requires the plaintiff to allege, under Rule 9(b), the
circumstances of the alleged fraud with sufficient particularity
to place the defendant on notice of the precise misconduct with
which it is charged." (Def. Reply at 2-3 (citing Fuqua v.
Bristol-Myers Squibb Co., 926 F. Supp. 2d 538, (D.N.J.
2013)).) Because the Court finds that Plaintiffs' claims were
tolled until September 2008 under the discovery rule, it need
not address whether Plaintiffs have stated enough facts to toll
their claims under the fraudulent concealment tolling doctrine.
See, e.g., In re Magnesium Oxide Antitrust Litig., at *20
(stating that tolling under the fraudulent concealment doctrine
requires allegations of fraudulent concealment to be "pled with
particularity in accordance with Federal Rule of Civil Procedure
9(b)."); In re Mercedes-Benz Anti-Trust Litigation, 157 F. sup.
2d 355, 368 (D.N.J. 2001) ("Fraudulent concealment allegations
[as part of a statute of limitations defense] are, moreover,

14.   Because it is not apparent on the face of the
Complaint that Plaintiffs' claims are barred by the statute of
limitations, the Court will permit both claims to proceed.
Defendant's motion to dismiss will be denied without prejudice
to Defendant's right to assert the statute of limitations as an
affirmative defense at a later stage in the litigation.

15.   In a footnote, Defendant asks the Court in the
alternative to limit discovery to issues related to the statute
of limitations "to prevent the potentially unnecessary
expenditure of funds for merits discovery." (Def. Reply at 3
n.1.) The Court will deny this request. Federal Rule of Civil
Procedure 26 allows parties to obtain discovery "regarding any
matter, not privileged, which is relevant to the subject matter
involved in the pending action." The phrase "relevant to the
subject matter involved in the pending action" is "construed
broadly to encompass any matter that bears on, or that
reasonably could lead to other matter that could bear on, any
issue that is or may be in the case." Oppenheimer Fund, Inc. v.
Sanders, 437 U.S. 340, 351 (1978). Because discovery is designed
to help define and clarify the issues, it is "not limited to
issues raised by the pleadings." Id. The Court will therefore

---

subject to the requirement of particular pleading set forth in
Federal Rule of Civil Procedure 9(b)." (citing In re Prudential
Ins. Co. of Am. Sales Practices Litig., 975 F. Supp. 584, 598
(D.N.J. 1996))).

14

decline to confine discovery to issues related to the statute of limitations. The Court also notes that judicial economy would not be served by limiting discovery to the issue of statute of limitations. Piecemeal litigation is disfavored except in the clearest cases where a threshold issue is likely to be resolved in a manner that disposes of the case. Should discovery on this issue result in facts unfavorable for Defendant, the parties would need to return to court, further discovery would need to be ordered, and witnesses may need to be re-deposed, all of which creates additional delay and expense for both parties. <u>See United States v. Kensington Hosp.</u>, 760 F. Supp. 1120, 1129 (E.D. Pa. 1991) (denying defendant's request to limit initial discovery to statute of limitations issues because the question is bound up with other facts in dispute and should not be attempted to be separated out for purposes of limiting discovery).

16.   The accompanying order will be entered.


**June 8, 2015**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge


15