IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CEMENT MASONS' UNION LOCAL NO. 592 PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALMAND BROTHERS CONCRETE, INC., <br><br> Defendant. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action No. 14-5413 (JBS/AMD) <br><br> **OPINION** |

APPEARANCES:

Judith A. Sznyter, Esq.
Jennings Sigmond, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
    Attorney for Plaintiffs Cement Masons' Union Local No. 592
    Pension Fund, Cement Masons' Union Local No. 592 Welfare
    Fund and Cement Masons' Union Local No. 592 Joint
    Apprenticeship Training Fund, Cement Masons' Union Local
    No. 592 Political Action Committee, Cement Masons' Union
    Local No. 592 of Philadelphia, PA, and Bill Ousey.


William M. Tambussi, Esq.
William F. Cook, Esq.
Christopher Albert Reese, Esq.
Brown & Connery, LLP
360 Haddon Avenue
Westmont, NJ 08108
    Attorneys for Defendant Almand Brothers Concrete, Inc.


**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

    This matter comes before the Court by way of cross-motions

for summary judgment submitted by Defendant Almand Brothers

Concrete, Inc. (hereinafter "Defendant") and Plaintiffs Cement

Masons' Union Local No. 592 of Philadelphia, PA (hereinafter

"Local 592"), its associated benefit funds,[1] and their fiduciary

Bill Ousey (hereinafter, collectively, "Plaintiffs"). (See

Motion for Summary Judgment (hereinafter "Def.'s Mot.") [Docket

Item 42]; Motion for Summary Judgment (hereinafter, "Pls.'

Mot.") [Docket Item 45].) Plaintiffs allege that Defendant is

liable for delinquent contributions from January 1, 2005 to

December 31, 2007 under the Employee Retirement Income Security

Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1145, et seq.,

and § 301 of the Labor Management Relations Act (hereinafter,

"LMRA"), 29 U.S.C. § 185. (See Pls.' Mot. [Docket Item 45].)

Defendant alleges that Plaintiffs' claims are time-barred, that

Plaintiffs have failed to present any evidence of the terms,

conditions, or obligations of a collective bargaining agreement

between Local 592 and Almand Brothers, that Plaintiffs have not

established the basis for any alleged deficiencies, and that

Plaintiffs have no standing to bring this action. (See Def.'s

Mot. [Docket Item 43].)

    Because the Court finds that there are genuine disputes of

---

[1] These associated benefit funds include Plaintiffs Cement
Masons' Union Local No. 592 Pension Fund, Cement Masons' Union
Local No. 592 Welfare Fund, Cement Masons' Union Local No. 592
Joint Apprenticeship Training Fund, and Cement Masons' Union
Local No. 592 Political Action Committee (hereinafter,
collectively, "the Funds" or "the Local 592 Funds").

material fact regarding when Plaintiff learned of the delinquent contributions, the terms and conditions of the collective bargaining agreement and the calculation of delinquent contributions, the Court will deny the parties' cross-motions for summary judgment.[2]

## II. BACKGROUND

### A. Factual Background[3]

Defendant Almand Brothers Concrete, Inc. is a concrete installation contractor based in Audubon, New Jersey. (See Amended Complaint [Docket Item 4], ¶ 11; Answer [Docket Item 16], ¶ 11.) In 1999, Local 592 merged with Local Union 699, and

---

[2] Also before the Court is Defendant's motion to strike the expert report prepared by Jacquelyn Coyle on behalf of Plaintiffs. (See Motion to Strike Expert Testimony of Jacquelyn Coyle [Docket Item 43].) In light of the Court's decision to deny both motions for summary judgment, it would be more appropriate to consider this issue prior to trial in the context of a motion in limine. Therefore, the Court shall deny Defendant's motion without prejudice to Defendant's right to refile it at a later date as a motion in limine when the context of anticipated trial testimony is more clear.

[3] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to the party opposing summary judgment in each respective cross motion. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d. 496, 499 n.2 (D.N.J. 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n.9 (D.N.J. 2015) (same).

the entities' respective Funds merged in or about 2007.[4] (See Ousey Dep. [Docket Item 44-10], 23:24-24:8; DiSabato Dep. [Docket Item 44-8], 10:3-12:7; Fera Dep. [Docket Item 44-9], 72:15-76:16.) Local 592 and its Funds are the surviving post-merger entities. (See id.) For the time frame of January 1, 2005 to December 31, 2007, Plaintiffs allege that Defendant and Local 592 were parties to a collective bargaining agreement, and that Defendant did not make contributions to the Funds required under such agreement. (See Amended Complaint [Docket Item 4], ¶¶ 18, 22.) Defendants deny this allegation. (See Answer [Docket Item 16], ¶¶ 18, 22.)

One issue central to the consideration of the present motions is fixing a date for Plaintiffs' discovery of Defendant's alleged contribution shortfalls, which would have triggered the statute of limitations period. In April 2001, Anthony M. Almand, Defendant's owner signed a single-page document which contained a heading that read "Independent Contractors Agreement with Plasterers and Cement Masons Union Local No. 592."[5] (Almand Dep. [Docket Item 44-1], 24:7-19.)

---

[4] Plaintiffs Local 592 and the Funds are the surviving entities of the mergers.

[5] Although two copies of the agreement have been produced to the Court, one dated November 2, 1999, (see Independent Contractors Agreement [Docket Item 42-15]), and the other dated April 2001, (see Independent Contractors Agreement [Docket Item 42-16]), Mr. Almand testified that he only signed the document on one occasion in 2001. (Almand Dep. [Docket Item 44-1], 24:7-19.)

On January 22, 2008, Novak Francella, LLC, Plaintiffs'
accounting firm, contacted Defendant in order to schedule a
payroll compliance review. (<u>See</u> Letter [Docket Item 42-5], Jan.
22, 2008.) This payroll compliance review was part of a routine
process, in which Novak Francella typically performed a review
of each employer once every three years. (<u>See</u> Cooper Dep.
[Docket Item 44-5], 91:10-92:24.) However, due to Novak
Francella's inability to get in contact with Defendant and due
to a number of cancellations by Defendant's accountant, D.
Michael Carmody, the payroll compliance review did not begin
until mid-June 2008. (<u>See</u> <u>id.</u> at 106:6-108:23; 130:14-137:5;
143:10-25; 147:17-22.)

From mid-June 2008 to mid-July 2008, a payroll compliance
review was conducted by Marta Cooper, an employee of Novak
Francella. (<u>See</u> <u>id.</u> at 11:16-12:24, 147:17-150:3.) The purpose
of the review was "to assist [Plaintiffs] in determining whether
contributions to the Trust Funds [were] being made in accordance
with the collective bargaining agreement in effect and with the
Trust Agreements of the Funds." (Letter [Docket Item 42-14],
July 10, 2008.) The compliance review included a review of
Defendant's "payroll books and related records . . . , covering
the period January 1, 2005 through December 31, 2007."
(Declaration of Jacquelyn K. Coyle in Support of Plaintiffs'
Motion for Summary Judgment (hereinafter "Coyle Dec.") [Docket

Item 45-5], ¶ 8.)[6]

In order to calculate amounts owed by Defendant to the
Funds, Novak Francella used specific contractual rate sheets for
each corresponding year for "New Jersey Area 699." (See Cooper
Dep. [Docket Item 44-5], 220:10-222:3; Payroll Compliance Review
Report [Docket Item 45-6], 1-8 on the docket.) Cooper applied
the contractual rates to employees identified on Defendant's
payroll as "concrete" and "masonry." (Cooper Dep. [Docket Item
44-5], 165:5-170:23; 220:10-222:3.) In a letter to Plaintiffs,
dated July 10, 2008, Cooper informed Plaintiffs of the procedure
and purpose of the review. (See Letter [Docket Item 42-14], July
10, 2008.) The letter also informed Plaintiff that the
procedures "were substantially less in scope than an audit of
[Defendant's] financial statements" and that no opinion was
expressed as to Defendant's financial statements. (Id.)

Cooper then forwarded the payroll compliance review report
to her supervisors, Joanna Kiszlo and Jacquelyn Coyle, for
review. [Docket Item 42-8] (Cooper Dep. [Docket Item 44-5],
150:4-6.) On August 22, 2008, Ms. Kiszlo signed off on the

_____

[6] This document is not to be confused with the report prepared by
Ms. Coyle on Plaintiffs' behalf, which is the object of
Defendant's present motion to strike [Docket Item 43]. The Coyle
Report was completed by Ms. Coyle on July 26, 2016 and produced
to Defendant on July 29, 2016. (See Plaintiff's Disclosure and
Report of Expert Testimony Prepared by Jacquelyn Coyle
(hereinafter, "Coyle Report") [Docket Item 43-3].)

report. (Id. at 150:8-12.) On August 29, 2008, Ms. Coyle signed
off on the report. (Id. at 150:13-18.) On September 2, 2008,
Novak Francella transmitted the Payroll Compliance Review Report
to Defendant's accountant and requested information regarding
any adjustments or challenges within ten (10) days. (See Letter
[Docket Item 42-9], Sept. 2, 2008, 1 on the docket.) The letter
plainly stated that "[i]f we have not heard from you within ten
business days from the date of this letter, we will submit our
report to the Fund Administrator." (Id.) Defendant did not
provide documentation to contest the findings of the payroll
compliance review. (See Coyle Dec. [Docket Item 45-5], ¶ 14.) On
September 11, 2008, Novak Francella transmitted the final
payroll compliance review report to the Funds' Administrator,
Anthony DiSabato, and their Trustees.[7] (See Cooper Dep. [Docket
Item 44-5], 261:15-262:18, 264:24-268:7.) The payroll compliance
review suggested that Defendant owes a total of $2,236,041.21[8] to
Plaintiffs in unpaid contributions and wage deductions for the

_____

[7] In Marta Cooper's deposition, these documents are identified as
"Cooper 23" and "Cooper 25." "Cooper 23" is purported to be the
Payroll Compliance Review Report that was sent to Plaintiffs
along with the September 11, 2008 letter, identified as "Cooper
25". (See Cooper Dep. [Docket Item 44-5], 261:15-262:18, 264:24-
268:7.) The September 11, 2008 letter has not been provided to
the Court at this juncture.
[8] Plaintiffs are also seeking liquidated damages in an amount of
$223,604.12 and interest on the unpaid contributions in the
amount of $964,563.54, pursuant to Section 502(g)(2) of ERISA.
(See Coyle Dec. [Docket Item 45-5], ¶ 11.)

period of January 1, 2005 through December 31, 2007. (See Coyle Dec. [Docket Item 45-5], ¶ 11.) Plaintiffs filed the Complaint on August 28, 2014 (see Complaint [Docket Item 1]), and an Amended Complaint on October 21, 2014. (See Amended Complaint [Docket Item 4].)

**B. Procedural History**

On August 28, 2014, Plaintiffs commenced a civil action against Defendant, alleging that between January 2005 and December 2007, Defendant failed to make certain payments to Plaintiffs required by Defendant's collective bargaining agreement with Local 592 and the Funds' trust agreements, in a sum totaling at least $2,738,574.86. (Complaint [Docket Item 1], ¶ 17.) Plaintiff filed an Amended Complaint on October 21, 2014. (Amended Complaint [Docket Item 4].) Plaintiffs assert an ERISA violation under 29 U.S.C. § 1145 in Count One for failure to make contractually-required contributions, and a breach of contract claim in Count Two under 29 U.S.C. § 185. (Id. at ¶¶ 19, 23.)

On June 8, 2015, the Court issued a memorandum opinion denying Defendant's motion to dismiss. See Cement Masons' Union Local No. 592 Pension Fund v. Almand Bros. Concrete, Inc., No. 14-5413, 2015 WL 3604747 (D.N.J. June 8, 2015). Defendant filed an Answer to Plaintiffs' Amended Complaint on June 22, 2015. (See Answer [Docket Item 16].)

The cross-motions have been fully briefed,[9] and the Court

convened oral argument on December 5, 2017.

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial

burden of demonstrating that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a

matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Once a properly supported

motion for summary judgment is made, the burden shifts to the

non-moving party, who must set forth specific facts showing that

there is a genuine issue for trial. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for

---

[9] Defendant filed motions for summary judgment and to strike the expert testimony of Jacquelyn Coyle. (See Def.'s Mot. [Docket Item 42]; Strike Mot. [Docket Item 43].) Plaintiffs filed a cross-motion for summary judgment. (See Pls.' Mot. [Docket Item 45].) Defendant filed a brief in opposition to Plaintiffs' cross-motion for summary judgment and Plaintiffs filed briefs in opposition to Defendant's motions for summary judgment and to strike the expert testimony of Jacquelyn Coyle. (See Brief in Opposition to Plaintiffs' Motion for Summary Judgment [Docket Item 51]; Brief in Opposition to Defendant's Motion for Summary Judgment [Docket Item 52]; Brief in Opposition to Defendant's Motion to Strike Expert Testimony of Jacquelyn Coyle [Docket Item 53].) Plaintiffs filed a reply brief to Defendant's brief opposing Plaintiffs' cross-motion for summary judgment and Defendant filed reply briefs to Plaintiffs' briefs opposing Defendant's motions for summary judgment and to strike the expert testimony of Jacquelyn Coyle. (See Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment [Docket Item 54]; Reply Brief in Further Support of Motion to Strike [Docket Item 55]; Reply Brief in Further Support of Motion for Summary Judgment [Docket Item 56].) The dense record for these motions stands almost six inches high.

summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portline Transportes Mar. Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the nonmoving party. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

The summary judgment standard is not affected when the parties file cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Such motions

> "are no more than a claim by each side that it
> alone is entitled to summary judgment, and the
> making of such inherently contradictory claims

does not constitute an agreement that if one
is rejected the other is necessarily justified
or that the losing party waives judicial
consideration and determination whether
genuine issues of material fact exist."

Transportes Ferreos de Venez. II CA v. NKK Corp., 239 F.3d 555,

560 (3d Cir. 2001) (quoting Rains v. Cascade Indus., Inc., 402

F.2d 241, 245 (3d Cir. 1968)). "If upon review of cross-motions

for summary judgment [the record reveals] no genuine dispute

over material facts, then [the court] will order judgment to be

entered in favor of the party deserving judgment in light of the

law and undisputed facts." Iberia Foods Corp. v. Romeo, 150 F.3d

298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson

Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1998)).

**IV. DISCUSSION**

A. Defendant's Motion for Summary Judgment

Defendant argues that summary judgment should be granted in

its favor because (1) Plaintiffs failed to present any evidence

of the predicate terms, conditions or obligations under any

collective bargaining agreement between Local 592 and Almand

Brothers; (2) Plaintiffs cannot establish the basis for any

alleged deficiencies, as their claims rest on a critically

flawed 2008 payroll compliance review; (3) Plaintiffs' claims

are barred by the statute of limitations; (4) Plaintiffs have no

standing to bring this action. The Court will address each claim

below. (See Def.'s Mot. [Docket Item 43].)

11

1. <u>Whether Complaint is untimely under six-year statute of</u>
   <u>limitations</u>

In its previous decision on Defendant's motion to dismiss,

the Court concluded that New Jersey law supplies the statute of

limitations for the Plaintiff's breach of contract claim and the

ERISA claim, and that both claims are subject to a six-year

statute of limitations period. <u>See</u> <u>Cement Masons' Union Local</u>

<u>No. 592 Pension Fund v. Almand Bros. Concrete, Inc.</u>, No. 14-

5413, 2015 WL 3604747, at *2 (D.N.J. June 8, 2015) (rejecting

Defendant's statute of limitations claims because Plaintiff

alleged enough facts to give rise to an inference that they

exercised due diligence by stating that Defendant concealed the

underpayments and delayed an audit until September 2008).[10] Based

on discovery, Defendant reasserts the statute of limitations

defense, arguing that Plaintiffs have failed to produce evidence

---

[10] <u>See</u> <u>Kapp v. Trucking Empls. of North Jersey Welfare Fund,</u>
<u>Inc.—Pension Fund</u>, 426 Fed. App'x 126, 129 (3d Cir. 2011)
(applying New Jersey's six-year limitations period governing
contract actions to ERISA claim for recovery of benefits); <u>Stier</u>
<u>v. Satnick Dev. Corp.</u>, 974 F. Supp. 436, 439 (D.N.J. 1997) ("New
Jersey's six-year statute of limitations applicable to contract
actions applies also to claims under ERISA to recover delinquent
pension contributions."); <u>Starr v. JCI Data Processing, Inc.</u>,
767 F. Supp. 633, 638 (D.N.J. 1991) (holding that New Jersey's
six-year statute of limitations applies to plaintiff's breach of
contract and ERISA claims, including claim to recover benefits);
<u>Hotel Emps. and Rest. Emps. Int'l Union Welfare Fund v. Pub of</u>
<u>N.J.</u>, 744 F. Supp. 91, 95 (D.N.J. 1990) (action under ERISA for
delinquent pension fund contributions is subject to the six-year
statute of limitations period governing contract actions rather
than shorter period for wage disputes).

that "establishes that any underpayments were not discovered until September 2008, or that Defendant resisted or delayed an audit." (Defendant's Brief in Support of Summary Judgment (hereinafter, "Def. Br.") [Docket Item 42-1], 27.) The Court disagrees.

The Court finds that, though Marta Cooper suspected deficiencies on or about July 10, 2008, the evidence indicates that the payroll compliance review was undertaken diligently and was not completed until after this date. In fact, the July 10, 2008 letter explicitly states that no opinion was expressed. (See Letter [Docket Item 42-14], July 10, 2008.) Cooper's superiors did not sign off on the report until late August 2008. (Payroll Compliance Review [Docket Item 42-8], 5.) Then, on September 2, 2008, Plaintiffs' auditors transmitted the payroll compliance review report to Defendant's accountant and requested information regarding any adjustments or challenges within 10 days. (Letter [Docket Item 42-9], Sept. 2, 2008.) The letter plainly stated that "[i]f we have not heard from you within ten business days from the date of this letter, we will submit our report to the Fund Administrator." (Id.) Defendant did not provide documentation to contest the findings of the payroll compliance review. (See Coyle Dec. [Docket Item 45-5], ¶ 14.) On September 11, 2008, Novak Francella transmitted the final payroll compliance review report to the Fund Administrator

Anthony DiSabato and the Trustees of the Funds. (See Cooper Dep.
[Docket Item 44-5], 264:24-268:7.)

A reasonable fact finder could find that this evidence
establishes that Plaintiffs exercised a sufficient degree of
reasonable diligence in adhering to their standard process of
conducting payroll compliance reviews every three years. (Cooper
Dep. [Docket Item 44-5], 91:10-92:24.) Moreover, this was a
situation where the agreement prescribed a self-reporting
system, under which Defendant was to submit monthly remittance
reports. See Robbins v. Iowa Rd. Builders Co., 828 F.2d 1348,
1354 (8th Cir. 1987) (noting that "[g]iven the self-reporting
system of employer contributions to the funds, the trustees may
not discover a particular employer owes delinquent contributions
unless and until they conduct an audit.") (citing Cent. States,
Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S.
559 (1985)); Hotel Emps. and Rest. Emps. Int'l Union Welfare
Fund v. Pub of N.J., 744 F. Supp. 91, 94 (D.N.J. 1990) (stating
same). Defendant has not produced any evidence that suggests
that a more diligent review of the monthly remittance reports
would have revealed the alleged delinquent payments at an
earlier date. Cf. Vernau v. Vic's Mkt., Inc., 896 F.2d 43, 44-46
(3d Cir. 1990) (holding that the funds' suit was barred by the
statute of limitations because the monthly reports submitted by
employer "clearly showed" discrepancies, and a reasonably

diligent review would have "instantly" revealed such).

There is ample evidence that, on July 10, 2008, Plaintiffs' accountants were still undertaking the preliminary phase of gathering additional information, in an exercise of due diligence, in order to determine whether Defendant was, in fact, delinquent in its contribution payments. See Riddell v. Riddell Wash. Corp., 866 F.2d 1480, 1494 (D.C. Cir. 1989). The payroll compliance review report was not completed and forwarded to Plaintiff until September 11, 2008. Under the facts most favorable to Plaintiffs, the first date on which Plaintiffs knew or reasonably should have known that Defendants had underpaid its contributions for the 2005-2007 time period was the date Plaintiffs received Novak Francella's report asserting Novak Francella's opinion that such deficiency existed: September 11, 2008. Since the detection of this deficiency could not be gleaned from Defendant's monthly reports of contributions, but required examination and audit of other records and data not in Plaintiffs' possession, no reasonable fact finder could find that Plaintiffs failed to act with due diligence in detecting the deficiency. Plaintiffs followed their customary and reasonable methodology of retaining accountants to perform a three-year audit, from which the auditors would offer an opinion to Plaintiffs regarding the existence of a deficiency in the employer's contributions.

There remains, however, a genuine factual dispute regarding the accrual date of the claims set forth in this action. Defendant alleges that the causes of actions accrued, at the latest, on July 10, 2008, when Novak Francella sent a letter to Plaintiffs indicating their compliance review was ongoing and was attached. The July 10, 2008 letter filed in this motion had no attachment, (see Letter [Docket Item 42-14], July 10, 2008), and therefore the Court cannot assess the validity of Defendant's position regarding that letter in the context of the present motions. Suffice it to say that Defendant has not established that Plaintiffs had knowledge that Defendant was indebted to the Funds more than six years before suit was filed on August 28, 2014. The accrual date for this cause of action, whether September 11, 2008 or July 11, 2008, remains in factual dispute and must be resolved at trial. The dispute is material because if the date Plaintiffs learned that Defendant owed contributions was September 11, 2008, this case was timely filed; if the date Plaintiffs gained such knowledge was July 11, 2008, then the six-year limitation clock expired before this suit was filed. Accordingly, this Court cannot find as a matter of law that this action is time-barred and Defendant's motion for summary judgment with respect to the statute of limitations is denied.

2. Whether an agreement existed between the Funds and Almand Brothers

Defendant presents an extensive argument regarding Plaintiffs' failure to produce a witness with in-depth knowledge of the terms, conditions or obligations of a predicate collective bargaining agreement that would render Defendant liable for the damages sought in this action. (Def. Br. [Docket Item 42-1], 4-17.) Defendant acknowledges that Mr. Almand signed what it characterizes as "a one-page signatory form," yet it claims that Mr. Almand was never informed of any specific contribution obligations to these entities. Id. at 16. The Court rejects this argument.

Union business agents have no duty to explain to the employer the terms, conditions, or consequences of a collective bargaining agreement. Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1505 (9th Cir. 1986). "A party who signs a contract is bound by its terms regardless of whether he reads it or considers the legal consequences of signing it." Id. (citing Operating Eng'rs Pension Tr. v. Gilliam, 737 F.2d 1501, 1503-04 (9th Cir. 1984)). Further, this Court has viewed an employer's failure to object to the attachment of any contribution obligations arising out an agreement prior to making payments in accordance to said employee contribution agreement as evidence of a valid and

17

enforceable agreement. See N.J. Carpenters Pension Fund v. Hous. Auth., 68 F. Supp. 3d 545, 564 (D.N.J. 2014) (citing Russ v. S. Water Mkt., Inc., 769 F.3d 556, 557 (7th Cir. 2014) (finding an enforceable employee contribution agreement despite the lack of traditional contractual formalities where employer and union merely shook hands after negotiation and exchanged notes laying out operative terms because the employer's "performance" provided sufficient indicia of its "assent to be bound")).

Plaintiffs produced evidence showing that Defendant signed a single-page document that can be construed as either a "me too agreement"[11] or a mere signatory page of collective bargaining agreement. (See Independent Contractors Agreement [Docket Item 42-16].) Regardless of how one construes the signed document, the Court finds that the effect remains the same: Defendant is

_____

[11] A "me too" agreement is an agreement whereby an employer who is not a member of a trade association agrees to be bound by the terms of a master collective bargaining agreement. Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., 344 F. App'x 770, 773 (3d Cir. 2009); see also N.L.R.B. v. Boston Dist. Council of Carpenters, 80 F.3d 662, 664 (1st Cir. 1996) (A "[u]nion exercises the collective bargaining authority of its constituent locals in negotiating a . . . Master Agreement ([hereinafter] "MA") with several multi-employer associations. Once a MA has been negotiated with these . . . associations, the Union customarily offers the same MA to other area employers, including those which neither belong to a[n] . . . association nor otherwise participate in negotiations. These nonparticipating employers may bind themselves to the negotiated MA simply by executing what are known as "me too" acceptances . . . ."); Davon, Inc. v. Shalala, 75 F.3d 1114, 1117 (7th Cir. 1996) (interpreting "me too" clause in the same manner).

bound to all of the terms and conditions of the collective
bargaining agreement.

Further, the Court finds that Defendant's assertion that
Mr. Almand never received or read the full collective bargaining
agreement is critically undermined by the fact that Plaintiffs
clearly show that Defendant performed in accordance to the terms
and conditions of the agreement. (See Employer Contribution
Inquiry [Docket Item 42-13]; Remittance Forms [Docket Item 42-
17].) Specifically, Plaintiffs highlight Mr. Almand's deposition
testimony, which indicates that Defendant paid the contract wage
rate and fringe benefits to Union members that was prescribed by
the collective bargaining agreement. (Almand Dep. [Docket Item
44-1], 32:24-37:9, 43:3-49:21; Remittance Forms [Docket Item 42-
17].) Affording all reasonable inferences to Plaintiffs, as the
non-moving party to Defendant's motion for summary judgment, the
Court finds that a reasonable fact-finder could find that this
evidence is indicative of Defendant's assent to be bound by the
terms and conditions of the "master" collective bargaining
agreement that witness Marta Cooper references throughout her
deposition. (Cooper Dep. [Docket Item 44-5], 61:23-65:7, 70:1-
14; Independent Contractor Collective Bargaining Agreement
[Docket Item 42-11].)

3. Whether Plaintiffs' calculation of delinquent contributions
   is accurate

Defendant avers, at length, that summary judgment should be
granted in its favor because the compliance review report,
conducted by Marta Cooper, "is so fundamentally defective that
it cannot remotely substantiate any ERISA or contractual
liability." (Def. Br. [Docket Item 42-1] 17-26.) Specifically,
Defendant argues that the review is fundamentally defective
because 1) Cooper improperly assumed that all work conducted by
Almand Brothers from 2005 to 2007 was "covered work" which
required contributions; 2) Cooper improperly assumed that all
workers at Almand Brothers were journeymen for the Cement
Masons; 3)Cooper improperly assumed that numerous payments for
expenses in Almand Brothers' cash disbursement journal were
wages for "covered work"; 4) Cooper improperly assumed that
certain hourly contribution rates applied to Almand Brothers; 5)
Cooper improperly assumed that no remittances were made for the
time frame of January 1, 2005 to December 31, 2007. (Id.) In
essence, Defendant argues that Cooper's payroll compliance
review consisted of an array of false assumptions that should be
deemed fatal to Plaintiffs' ERISA and contractual claims due to
what would amount to a miscalculation of delinquent
contributions. (Id.) However, Defendant fails to cite to any
authority to support its position that an erroneous calculation

defeats the Funds' claims in their entirety, and the Court is not aware of such authority. Not surprisingly, the Court finds that, in similar cases, courts have routinely concluded that granting summary judgment is improper when there is a factual dispute relating to audit calculations. See Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Empl'rs by Fanning v. Murphy's Tire, 97-814, 1998 WL 865594, at *9 (N.D.N.Y. Dec. 9, 1998) (collecting cases); Ill. Conf. of Teamsters and Empl'rs Welfare Fund v. Steve Gilbert Trucking, 71 F.3d 1361, 1367 (7th Cir. 1995); Hanley v. Adam, 1998 WL 560282, at *5-8 (N.D. Ill. Aug. 26, 1998) (denying fund's motion for summary judgment because defendant raised issues of fact relating to audit calculation); Bourgal v. Robco Contracting Enters., Ltd., 969 F. Supp. 854, 864-65 (E.D.N.Y. 1997) (stating that in light of the unsettled application of the burden shifting analysis in the Second Circuit and the defendant's challenge to the damage figure, the "better approach" was to deny fund's motion for summary judgment and proceed to damage hearing); Sullivan v. Aloisio, 1997 WL 587653, at *4-5 (N.D. Ill. Sept. 17, 1997) (denying plaintiff's motion for summary judgment because issue of fact raised by defendant's affidavit that he performed non-covered work); Chi. Dist. Council of Carpenters Pension Fund v. S&M Exteriors, Inc., 1996 WL 327989, *1-2 (N.D. Ill. June 12, 1996) ("Although [the] defendant has

not presented precise documentation regarding the number of
hours actually worked by employees of sub-contractors—and would
need to do so at trial—it has presented evidence which . . .
puts the Funds' calculation into question" and summary judgment
is improper). Though the cited cases represent instances where a
plaintiff's summary judgment motion was denied as a result of an
employer proffering evidence to challenge the calculation of
delinquent contributions, the Court finds that the underlying
principle—that summary judgment is improper when there is a
genuine factual dispute as to the audit calculation—remains
applicable where, as in this case, Defendant moves for summary
judgment.

    4. The Local 592 Funds have standing to prosecute this action

    Defendant contends that the Local 592 Funds are not the
real parties in interest and have no standing because, from the
time frame of 2005 to 2007, Local 592's Funds did not apply to
South Jersey. (Def. Br. [Docket Item 42-1], 28-29.) In support
of this argument, Defendant highlights, inter alia, the
deposition testimony of the Funds' Administrator from 1995 to
2013, Anthony Disabato, former Local Fund 592 Business
Administrator, Michael Fera, and the Funds' Fiduciary, Bill
Ousey, which suggests that, though Local 592 and Local 699
merged in 1999, the respective Funds did not merge until after
July 2007. (Id.; Ousey Dep. [Docket Item 44-10], 23:24-24:8;

DiSabato Dep. [Docket Item 44-8], 10:3-12:7; Fera Dep. [Docket Item 44-9], 72:15-76:16.) Put differently, Defendant argues that, because Local 699's Funds did not merge with Local 592's Funds until after 2007, Local 592 would not be parties to any agreement that pre-dated the merger. While the Defendant cites to an array of New Jersey state court cases regarding common law rules of privity of contract,[12] Defendant fails to cite to any federal case law or statute that provides that a surviving post-merger fund does not have standing to sue for unpaid contributions owed to the merged fund. For the reasons that follow, the Court finds that the Local 592 Funds, as the surviving post-merger funds, have standing to collect payments due to former Local 699 Funds.

The Court will be guided by how the Third Circuit has addressed other instances of mergers and successor liability, in the context of ERISA, in its analysis. For example, in <u>Teamsters Pension Trust Fund v. Littlejohn</u>, 155 F.3d 206, 208 (3d Cir. 1998), the Third Circuit addressed a situation where a surviving post-merger union argued that it was not liable for unpaid pension contributions because it did not have notice of the delinquency at the time it merged with another union. In holding

---

[12] It is well established that ERISA displaces all state law purporting to relate to private pension plans. <u>See</u> <u>McGurl v. Trucking Emps. Welfare Fund</u>, 124 F.3d 471, 476 (3d Cir. 1997).

that the surviving post-merger union was liable for unpaid pension contributions, the court determined that successor liability under ERISA was governed by federal common law, "developed with ERISA's policy goals in mind . . . to protect plan participants and their beneficiaries." Id. (citing 29 U.S.C. § 1001(b)). Accordingly, the court reasoned that transferring the debts and obligations of the predecessor to the surviving entity "will further ERISA's policy goal of protecting employee pension plan participants and their beneficiaries." Id. at 210.

The court, then, noted that a review of case law indicated a nearly universal acceptance of the principle that "when an obligation imposed by federal labor or environmental law is involved, merger or consolidation automatically operates to transfer the debts of the predecessor to the surviving entity." Id. at 209 (citing Aluminum Co. of Am. v. Beazer E., Inc., 124 F.3d 551, 565 (3d Cir. 1997); Southward v. S. Cent. Ready Mix Supply Corp., 7 F.3d 487, 495 (6th Cir. 1993); Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1325 (7th Cir. 1990); Anspec Co., Inc. v. Johnson Controls, Inc., 922 F.2d 1240, 1245 (6th Cir. 1991)).

With this in mind, the Court finds that the only logical conclusion to be reached is that the surviving post-merger funds, the Local 592 Funds, are proper parties in this action.

If a merger automatically operates to transfer the debts and
obligations of Local 699's Funds to Local 592's Funds, then
Local 592's Funds must assume the right to bring a cause of
action in order to collect delinquent payments that are
necessary to fulfill the debts and obligations of its employee
pension plan participants. The Court finds that this conclusion
is the only way that ERISA's policy goal of protecting employee
pension plan participants and their beneficiaries is promoted in
this instance. Moreover, because Local 592's Funds, as the
surviving post-merger entities, have essentially stepped into
the shoes and position of Local 699's Funds, the Court finds
that the elements of constitutional standing (injury-in-fact,
causation, and redressability) are met.[13] It would be contrary to
ERISA's purposes of protecting employee benefits if an
employer's obligation to make contributions to an employee
benefit fund were deemed to terminate upon the fund's merger
with a successor fund. Thus, the Court finds that Plaintiffs
Local 592's Funds are real parties in interest to this cause of
action, and that they have standing to prosecute it.

---

[13] "To establish Article III standing, a plaintiff must have '(1)
suffered an injury in fact, (2) that is fairly traceable to the
challenged conduct of the defendant, and (3) that is likely to
be redressed by a favorable judicial decision.'" Mielo v. Steak
'n Shake Operations, Inc., 897 F.3d 467, 478 (3d Cir. 2018)
(quoting Spokeo, Inc. v. Robins, --- U.S. ----, 136 S.Ct. 1540,
1547 (2016)).

For the reasons set forth above, the Court will deny
Defendant's motion for summary judgment.

B. Plaintiffs' Motion for Summary Judgment

In their moving papers, Plaintiffs generally argue that
summary judgment should be entered in their favor because they
have produced sufficient evidence to satisfy all elements of
both claims pursuant to Sections 515 and 502(g)(2) of ERISA and
Section 301 of the LMRA, and there exist no genuine dispute of
material fact. (Plaintiff's Brief in Support of Summary Judgment
(hereinafter "Pl.'s Br.") [Docket Item 45-1], 7-28.) However, as
the Court alluded to in its analysis of Defendant's motion for
summary, the Court finds that Defendant has produced sufficient
evidence to establish a genuine dispute as to the correctness of
Plaintiffs' calculation of delinquent contributions, and summary
judgment is improper when there is a genuine factual dispute.

Though Defendant has not produced much quantitative
evidence[14] to challenge Plaintiffs' calculation of delinquent
payments, the Court finds that Defendant highlighted critical
deposition testimony of Marta Cooper which, giving all
reasonable inferences to Defendant as the non-moving party,

---

[14] The Court acknowledges that Defendant highlights the
remittance reports showing contribution payments made by
Defendant to Plaintiffs during the period in question. (See
Employer Contribution Inquiry [Docket Item 42-13].) These
payments were not accounted for in Plaintiffs' calculation of
delinquent payments.

could establish that Cooper relied on various false assumptions
in calculating delinquent payments. For instance, according to
Defendant's evidence, Cooper conducted the payroll compliance
review under the assumption that Defendant had not paid <u>any</u>
remittances for the time frame of January 1, 2005 to December
31, 2007. (Cooper Dep. [Docket Item 44-5], 126:7-129:4; 179:17-
181:4.) Yet, in the course of discovery, Plaintiffs produced a
remittance report for various contributions made by Defendant
for this time frame. (<u>See</u> Employer Contribution Inquiry [Docket
Item 42-13].) Cooper did not have this document for purposes of
her analysis and calculation of delinquent payments. (Cooper
Dep. [Docket Item 44-5], 155:13-156:6.) Additionally, Defendant
directs the Court's attention to deposition testimony that
suggests that, in the payroll compliance review, Cooper assumed
that Plaintiffs' jurisdiction extended to residential work in
New Jersey (Cooper Dep. [Docket Item 44-5], 87:14-18) despite
Plaintiffs' former representatives, William Settimi and Bill
Ousey, testifying that Plaintiffs did not have jurisdiction in
New Jersey over residential work (Settimi Dep. [Docket Item 44-
11], 34:21-35:6; 37:7-19; Ousey Dep. [Docket Item 44-10], 55:17-
58:6).

The Court finds that this evidence establishes a factual

dispute as to the calculation of delinquent payments,[15] and thus,
summary judgment is improper, for the reasons cited in Part
IV.A.3, <u>supra</u>.

For the reasons set forth above, the Court will deny
Plaintiff's motion for summary judgment.

## V. CONCLUSION

Because the Court finds that there are genuine disputes of
material fact regarding when Plaintiffs learned of the
delinquent contributions, the terms and conditions of the
collective bargaining agreement, and the calculation of
delinquent contributions, the parties' cross-motions for summary
judgment [Docket Items 42; 45] will be DENIED. Additionally,
because the Court finds that it would be more appropriate to
consider Defendant's motion to strike Jacquelyn Coyle's expert
testimony in the context of a motion in limine, the motion
[Docket Item 43] shall be dismissed without prejudice to
Defendant's right to refile it at a later date as a motion in
limine.

---

[15] This may be a case in which the parties can agree to a lesser
sum that is not in dispute, permitting entry of a stipulation of
the amount of contributions not in dispute, either in the Joint
Final Pretrial Order or in a Consent Order. If so, the trial
would focus only upon the remaining amount of Plaintiff's claim
as to which there remains a dispute. Counsel are requested to
meet and confer to attempt to reach such agreement.

The accompanying Order will be entered.


**September 18, 2018**                    **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           U.S. District Judge